UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-10732-RGS

MIGUEL A. MORALES

v.

SUPERINTENDENT JAMES SABA, et al.


CIVIL ACTION NO. 15-13887-RGS

MIGUEL ANGEL MORALES, JR.

v.

CAROL HIGGINS O'BRIEN, et al.


MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

February 12, 2016

STEARNS, D.J.

For the reasons stated below, the court denies as moot the motion to proceed *in forma pauperis* pending in 15-13887; grants the defendants' motion to dismiss the fourth amended complaint filed in 15-10732; and *sua sponte* dismisses (1) the claims against the five new defendants identified in the FAC in 15-10732 and (2) the three defendants identified in the complaint filed in 15-13887.

# I.   Background

## A.   The First Proceeding

### 1.   Procedural Background

On March 6, 2015, Miguel A. Morales, a *pro se* plaintiff now incarcerated at the Souza Baranoskwi Correctional Center, filed a civil rights complaint against seven state correctional officials (defendants James Saba, Elena Clodius, Harold Wilkes, Kurt Demoura, Jessica Creighton, Marc McGlynn and David Moore) complaining of, among other things, due process violations during disciplinary proceedings.  The case was randomly assigned to Magistrate Judge Boal pursuant to the court's consent program. Less than one month later, Morales filed an Amended Complaint adding an eighth defendant, Rebecca Donahue.

By Memorandum and Order dated June 16, 2015, Morales was permitted to proceed *in forma pauperis*, was assessed an initial filing fee payment.  His motion to add exhibits and for automatic judgment were denied and summons were issued for service of the amended complaint.  The defendants consented to magistrate judge jurisdiction and moved to dismiss the complaint for failure to state a claim.

Morales' motion for default and to amend were opposed by defendants. Although Morales initially consented to proceed before a Magistrate Judge

on August 5, 2015, less than three months later, on October 26, 2015, he filed a conflicting form indicating that he did not wish to proceed before a Magistrate Judge.  The following month, on November 3, 2015, Morales filed a motion seeking to amend the complaint to add Magistrate Judge Boal as a defendant in the case.

By Electronic Order dated November 10, 2015, Magistrate Judge Boal recused herself and the case was reassigned to the undersigned District Judge.  On November 12, 2015, Morales' fourth motion to amend was allowed and the fourth amended complaint ("fourth amended complaint" or "FAC"), dated October 30, 2015, was deemed the operative complaint.

On November 24, 2015, Morales filed a Motion for Joinder seeking to add the new defendants named in the fourth amended complaint and to have the clerk issue summons for service of process.  By Electronic Order dated January 13, 2016, Morales' Motion for Joinder was allowed to the extent that the parties were named in the FAC.  The new parties named in the FAC are (1) Nancy White, DOC General Counsel; (2) Carol Higgins O'Brien, DOC Commissioner; (3) Nelson Julius, DOC correctional employee; (4) Yveline Simon, a mental health worker; and (5) Magistrate Judge Boal.

Now before the court are defendants' (Saba, Clodius, Wilkes, Demoura, Creighton, McGlynn, Moore and Donahue) motion to dismiss and

supporting memorandum.    See Docket Nos. 71-72.   In a footnote, the supporting memorandum notes that only three of the five new defendants are employed by the DOC.   Those three defendants are Nancy White, Carol Higgins O'Brien, and Nelson Julius.

Also before the court are Morales' Motion to Dismiss defendants' responsive pleadings with supporting memorandum as well as Morales' Motion for Default and Automatic Judgment.  See Docket Nos. 76-78.

### 2.    Factual Allegations

The following facts, taken as true for purposes of the motion to dismiss and §§ 1915, 1915A screening, are alleged in the FAC and begin with Morales' placement in the Departmental Disciplinary Unit (DDU) at MCI Cedar Junction on September 8, 2014.[1]  See 15-10732, Docket No. 50-1, p. 2.

Morales states that he was placed in the DDU for an assault on a staff member.  Id.  The following day, on September 9, 2014, Morales alleges that an officer informed him that "Lapriore says: Hi!"  Id.  Morales explains that he had previously complained that Chris F. Lapriore had threatened him and that he assaulted this officer while acting to defend himself.  Id.

---

[1] "The DDU is designed to provide a restrictive environment to punish prisoners who commit serious breaches of discipline while in the general prison population. It is also intended to deter future disciplinary violations." Leacock v. DuBois, 974 F. Supp. 60, 63 (D. Mass. 1997).

Morales alleges disciplinary reports are often used by correctional staff as a pretext to "seize his property" and on September 24, 2015, a disciplinary report issued with a false charge that he covered the cell window to darken the room.  <u>Id.</u> at 4-5.

On or about October 21, 2014, Morales alleges that he was repeatedly taunted by officers and was then transferred to D-Wing cell 285.  <u>Id.</u> at 3. Morales alleges that he was seen by a psychiatrist and transferred to Bridgewater State hospital because the psychiatrist claimed that Morales was "talking to himself." <u>Id.</u>  Morales alleges that on or about November 18, 2014, he was discharged from Bridgewater State Hospital and returned to the DDU, but required to speak with mental health workers.  <u>Id.</u>

On December 17, 2014, in an effort to have the hallway camera "catch evidence that officers were actually tampering with his food," Morales struggled with Officer Daniel McGuire who was delivering a meal tray to him. <u>Id.</u> at 4.  Morales alleges that excessive force was used against him when he was removed from his cell and placed on Awaiting Action status.  <u>Id.</u>  Morales alleges that an officer spoke to him "about being removed from his cell so that officers can seize his property as part of a practice known as DDU Awaiting Action status." <u>Id.</u>  At that time, Morales alleges that he "pointed out that there is no reason to remove him from the cell, because he had

already given his tray." Id. at 5.  However, 30 minutes later, Morales again refused to cooperate with leaving his cell.  Id.  Morales "defend[ed] his property" and was 'subdued and restrained and his property was seized including his legal work." Id.  Although Morales was advised that his property had been covered in urine, Morales contends that "the only spillage was coffee stains." Id.

Morales alleges that there were other conditions of his incarceration that "caused him to be assaultive" such as a three-week period in 2013 when Morales was not given a shower. Id. at 3. On December 16, 2014, the day before Morales had been removed from his cell and placed on DDU Awaiting Action status, he had complained about a full-body rash that developed after he had showered in the DDU. Id. at 4.  Morales refused to shower because of the rash he received from showering. Id. at 5.  Morales was seen by a doctor who explained that the rash originated from chlorine in the water at MCI Cedar Junction and Morales was instructed to take cold showers and machine wash his clothes. Id. at 6.  On occasion, Morales would receive cream to treat the rash, but he suffered in pain and didn't receive enough cream to treat the rash that covered his 6' 7" body. Id.

On or about January 8, 2015, Morales was advised that there were complaints that he smelled from body odor and he would be deemed as

harming himself if he would not shower.  Id. at 7.  Morales explained that he would shower, but not in the DDU because of the rash that developed each time he showered in the DDU.  Id.  At this time, defendant McGlynn and another officer "instigated" Morales and caused "[him] to respond."  Id. Defendant McGlynn filed a disciplinary report that he was assaulted by the Morales.  Id.  Morales alleges that defendants Moore and McGlynn are responsible for destroying Morales's property and failing to advise him of the condition of his property for a whole weekend.  Id. at 23.

A few days later, on or about January 10, 2015, defendants Wilkes and Clodius "attempted to show the Plaintiff a memo from the Department of Correction regarding how the water was treated by the city."  Id.  Morales ultimately complied with DDU procedure to be restrained by handcuffs in order to be showered.  Id. at 8.

On January 14, 2015, Morales returned to his cell from the DDU and discovered that some of his property was missing and that a swastika was drawn on his cell mirror.  Id. at 8.  That day, Morales caused one, perhaps two, loud disruptions and subsequently agreed to be removed from his cell. Id.

Morales contends that "security status" is used for placement in the DDU as punishment and that "mental health status" is used by the mental

health workers for placement in the DDU for suicidal prisoners as well as "punishment for arrogance." Id. at 8. Morales explains that between January 8 and January 14, 2015, he was placed on mental health status and placed on suicide watch for refusing to shower. Id. at 10. During that time, he was placed on security status after becoming disruptive when two officers damages Morales's property and left a swastika on his cell mirror. Id. Morales alleges that he was treated as if he was suicidal when placed on security status from January 17, 2015 through January 27, 2015. Id. at 9-10. Morales complains that for ten days he "was denied writing material, access to his legal work, a pen to file a grievance, utensils for food and the ability to sleep for more than an hour at a time [because the light was always on]." Id. at 10.

While on security status from January 17, 2015 through January 27, 2015, Morales alleges that he received legal mail from his attorney. Id. at 11. The letter from counsel explained that a brief was due and that Morales could either attend a video conference pro se or have his attorney proceed. Id. Morales explains that a year earlier, in December 2014, he had challenged appellee's brief on several grounds. Id. Morales states that he wanted to avoid the video conference and that the attorney did not specify a time for

the video conference.  Id.  Morales wanted to appear in court "to point out how he was treated and why he wanted to avoid the video conference."  Id.

Morales complains that on or about January 29, 2015, he was "forced to act with the court directly because it will be too time consuming for him [to] address the 'immediate deadline' to which he had asked about and had not received an answer."  Id.  Morales alleges that "the Appeals Court had called Defendant Clodius whom informed the Morales that he was due for a video conference, but to where the Morales still was not informed of when the video conference was."  Id. at 12.  Morales alleges that "at least one Defendant knew about Plaintiff's Appeal."  Id.  Morales alleges that unspecified actions of the defendants "compromised his criminal conviction appeal."  Id. at 13.  Morales alleges that on Jun 16, 2015, he "received a letter from his attorney that he lost his criminal conviction Appeal."  Id. at 15.  In connection with his criminal prosecution, Morales alleges, among other things, that "there was no proof that the Plaintiff was not attacked [and that is why he was convicted] "because of his skin color."  Id. at 22.

Morales complains that Defendant McGlynn moved him from Wing A1 to Wing B1 on February 20, 2015, and failed to transfer most of Morales's property.  Id. at 12-13.  Morales alleges that he was subsequently informed by Defendant Clodius that his property "was deemed to be covered in urine

and/or feces, and he had found out that all of his legal work and art books and magazines were destroyed." Id. at 13.  Almost one week later, on February 26, 2016, Morales "received a disciplinary report regarding the destruction of a state issued mattress and his property." Id.  Morales asserts that "he did not urinate on his property" and then wrote a civil complaint that was filed in the instant civil action.  Id.  At his disciplinary hearing, Morales explained to Defendant Donahue that he "didn't destroy the mattress or his property," "the cops are lying," and that urine is not an acid [and that it is] impossible for [plaintiff's] urine to destroy a mattress." Id. at 13-14.

On March 24, 2015, Morales "received a guilty finding for the accusation of destroying his property and a state issued mattress." Id. at 14. The following day, on March 25, 2015, Morales "wrote another civil complaint to verify his first complaint." Id.  On March 29, 2015, Morales "sent copies of his Disciplinary Report Appeal to Defendants James Saba and Elena Clodius." Id. at 15.

In connection with his disciplinary proceedings, Morales complains that defendant Rebecca Donahue "attempts to show that state regulations allow her to be biased [by using a summarized statement] to support [her disciplinary finding]." Id. at 21.  Morales complains that defendants Wilkes,

DeMoura and Creighton violated the regulations concerning disciplinary proceedings.  Id. at 23-26.  Morales contends that "through state law" he is "entitled to receive rehabilitation" from the defendants, as "staff member[s] of the Department of Correction."  Id. at 29.  Morales argues that his "DDU sanction is proof that the method of rehabilitation offered by the Department of Correction is insufficient."  Id. at 30.

Morales complains that defendant DOC counsel Sheryl Grant and Nancy White "libeled the plaintiff" when they suggested in pleadings that the relief Morales sought "would pose safety and security risks."  Id. at 18-19.  Morales also complains that these defendants "attempted to justify" the actions of other defendants in "falsely or wrongly accus[ing] the plaintiff, "destroy[ing] the plaintiff's legal work," and "compromise[ing] his arguments (that of which had involved case law) for his criminal conviction Appeal."  Id. at 19.

In connection with Morales's "argument against the separation of male and female prisoners," he complains that the defendants "fail to accommodate religion and forces the Morales to adhere to a foreign religious belief, to deny him the ability to social interaction and assembly, as an extension of his imprisonment, of where there is nothing in his sentence to imprisonment, that says, that he must adhere to the principles of a

penitentiary, in violation of the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution." Id. at 22, 36.

Morales contends that defendants Saba, Clodius, Wilker, Nelson and McGlynn, by prompting defendant Simon to place Morales on suicide watch for not showing, to avoid another chlorine rash, these defendants used the suicide unit to punish and control prisoners in violation of the United States Constitution. Id. at 22-23. Morales contends that he was denied access to the court during the periods he was placed on mental health status from 1/8 through 1/14/15 and security status from 1/17/15 through 1/27/15; particularly when he was unaware of a video conference scheduled for his criminal conviction Appeal. Id. at 23. He complains that defendant Saba's enforcement "of DDU Awaiting [Action] Status [allowed officers to seize his property] including legal work, as a result of receiving [discipline] prior to the report being given, that allowed defendants David Moore and marc McGlynn to think that it was okay to seize the Morales's property and be silent for three days." Id. at 23. Morales contends that this caused a violation of his access to the courts because it was a time when he "needed to act as h[is] own counsel" and his legal papers were allegedly destroyed by defendants Moore and McGlynn. Id. at 23. Morales alleges that he has a constitutional "right to be secure in himself and his property against

12

unreasonable searches and seizures [including random searches and searches outside his presence involving his legal work]." Id. at 32.

Morales contends that he should not "be denied pornography [based upon] the actions of other prisoners [especially because he does not have a history of improper use of pornography and other property]. Id. at 33-34. He contends that "the laws against tattooing, fornication and pornography must be repealed so as to not accommodate religion, and unless they have proof that the Morales has compromised security and/or safety in a similarly situated environment." Id. at 37.

Morales contends that it is through Judge "Boal's actions that the Plaintiff's Second Complaint (Docket No. 5) fails to state a claim upon which relief can be granted . . . ." Id. at 39. Morales seeks to challenge several of magistrate Judge Boal's rulings, *id.* at 40-41, and argues that she "has compromised this civil action so much that she had also interfered with the Plaintiff's ability to receive reliefs (sic) from a default judgment." Id. at 43. Morales further complains that defendants Grant and White "have not shown how the Plaintiff will use his reliefs to undermine security of the prison and where Defendants Grant and White have not explained how the United States Constitution does not support the Plaintiff's reliefs." Id. at 47.

Morales's formal prayer for relief begins on page 55 of the FAC, however, the seven prior pages contain a wide array of "facts" and "claims" ranging from an assertion that all defendants compromised Morales's life because he may have to pay a filing fee and remain separate from female inmates, some assertion that the "three strike" law must be repealed, a discussion of how it is the fault of prison and society that people commit crimes, and an assertion that inmates must be able to create miniature pieces of art work to sell and export around the world, "which would help the United States get out of debt." Id. at 48-55.

In the remainder of the FAC, Morales undertakes to recount everything he claims to have ever done in this case, everything the magistrate purportedly did, and a description of claims that he purports to have made in prior pleadings. Id. at 15-55.

## B.    The Second Proceeding

On November 16, 2015, Morales filed a civil rights complaint against Carol Higgins O'Brien, DOC Commissioner; Nancy Ankers White, DOC General Counsel; and Sheryl F. Grant, DOC counsel. The case was randomly assigned to District Judge Leo T. Sorokin. See 15-13887-LTS.

By Electronic Order dated December 3, 2015, and in light of Morales's assertion that his claims are part of the claims in 15-10732-RGS, the

proceeding [15-13887-LTS] was transferred to and consolidated with Civil Action No. 15-10732-RGS.   Now pending is Morales' motion for leave to proceed *in forma pauperis*, which was filed with his complaint on November 16, 2015.

The twenty-seven page complaint [15-13887] names as defendants (1) DOC Commissioner Carol Higgins O'Brien, (2) DOC Counsel Nancy Ankers White and (3) DOC Counsel Sheryl F. Grant.  See 15-13887, Docket No. 1.

On the first page of the complaint, in a section titled "Nature of Action," Morales states that he is suing "for declaratory and injunctive relief under Fed. R. Civ. P. 57 and 65 and 28 U.S.C. §2201."  Id.  Morales challenges several state and federal statutes arguing that they should be repealed as unconstitutional; specifically M.G.L. c. 127, § 22 (separation of prisoners; minors); M.G.L. c. 265, § 34 (tattooing body of person by other than qualified physician; punishment);  M.G.L. c. 231, § 6F (costs, expenses and interest for insubstantial, frivolous or bad claims or defenses); M.G.L. c. 127, § 38E (inmate   complaints;   grievance   system;   grievance   resolution),   § 38F(exhaustion of administrative remedies under § 38E; court consideration of inmate claims); 103 C.M.R. § 403 (inmate property); 103 C.M.R. § 430 (inmate discipline);   103 C.M.R. § 481 (inmate mail);   103 C.M.R. § 491 (inmate grievances); 18 U.S.C. § 1791(providing or possessing contraband in

prison); 28 U.S.C. § 530c (authority to use available funds); 28 U.S.C. § 1915A (screening); and 42 U.S.C. § 1997e (suits by prisoners).  Id.

The complaint consists of a running list of grievances, in no particular order.  Morales complains of his DDU sanction and argues that defendants interfered with his method of rehabilitation when they denied him access to certain art books.  Morales argues that the defendants have disrespected him and, in filing certain motions in C.A. No. 15-10732, have demonstrated their "malicious intent against the Plaintiff."  Morales contends that the defendants have used "libel against the plaintiff" and that he intends to use "an invisibility cloak illegally (instead of using the cloak to hide from certain criminals upon release [)]."  *Id.*

Finally, Morales complains that male and female prisoners are confined separately and seeks transfer to M.C.I. Framingham.  He complains that prisoners should be not be denied "objects that are not knives, guns, poisons (i.e. drugs and alcohol), and explosives based on the support of a religious belief and/or an unconstitutionally insufficient method of rehabilitation."

Morales demands that the defendants provide to him, among other things, "gold tipped, diamond encrusted, platinum plated, titanium teeth to be surgically implanted into the plaintiff's mouth to replace his other teeth,"

a "Rolls Royce TT1000 Superbike in a factory reproduction of the Limited Edition built in 1994, to be in the parking lot of the prison he is imprisoned in for him to access upon his release" and an "illuminescent (sic) inked full body tattoo comprised of at least 1,000 to 2,000 jewels comprised of diamonds, emeralds, sapphires, and rubies that are evenly dispersed as a single carat with piercings, for him to look better than a child when he is falsely accused of urinating on his bed and property."

Attached to the complaint are two exhibits: (1) a copy of the November 16, 2015 opposition to Morales's motion to amend that was filed in C.A. No. 15-10732-JCB; and (2) a copy of Morales' September 18, 2015 letter to M.C.I. Cedar Junction Superintendent James Saba complaining of the dehumanizing treatment he experienced when placed on "Security Status" and stating that if no settlement is reached, Morales will continue to file lawsuits until he permanently wins.  Id.

## II.    In Forma Pauperis Application

Because Morales was already permitted to proceed *in forma pauperis* by Memorandum and Order dated June 16, 2015, and in light of the fact that the two action shave been consolidated, the pending *in forma pauperis* motion that was filed in 15-13887 is denied as moot.

## III.    Standards of Review

## A.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A

Although Morales' complaint in Civil Action No. 15-10732 was served on the original eight defendants, the original complaint filed in Civil Action No. 15-13887 has not been served. Because Morales has been permitted in these consolidated cases to proceed *in forma pauperis*, summonses do not issue until the court reviews the complaints and determines that they satisfy the substantive requirements of 28 U.S.C. § 1915.  Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are subject to screening.  Both the original Complaint filed in No. 15-13887 and the FAC filed in No. 15-10732 are subject to screening pursuant to § 1915 and § 1915A.    Both § 1915 and § 1915A authorize federal courts to dismiss complaints *sua sponte* if the claims therein lack an arguable basis in law or fact, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.   See 28 U.S.C. § 1915(e)(2); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Denton v. Hernandeez, 504 U.S. 25, 32-33 (1992); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

A complaint is dismissed for failure to state a claim based upon the same standards used in reviewing a motion to dismiss a complaint pursuant

to Federal Rule of Civil Procedural 12(b)(6).  This standard is set out in detail below.

## B.   <u>Motion to Dismiss Standard</u>

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To state a claim, a complaint must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought."  Fed. R. Civ. P. 8(a).  On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." <u>Ruiz v. Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 5 (1st Cir. 2007) (citing <u>Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999)).  An action fails to state a claim on which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Factual allegations must be enough to raise a right to

relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." <u>Ruiz Rivera v. Pfizer Pharm., LLC</u>, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).  "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." <u>Juarez v. Select Portfolio Servicing, Inc.</u>, 708 F.3d 269, 276 (1st Cir.2013) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." <u>United States v. AVX Corp.</u>, 962 F.2d 108, 115 (1st Cir. 1992).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Berner v. Delahanty</u>, 129 F.3d 20, 25 (1st Cir.1997) (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir.1988)) (internal quotation marks omitted).

For the purpose of analyzing a motion to dismiss, the court must construe the complaint generously because plaintiff is proceeding *pro se*. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).   A document filed by a *pro se* party "is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); see also Strahan v. Coxe, 127 F.3d 155, 158 n.l (1st Cir. 1997) (noting obligation to construe *pro se* pleadings liberally) (citing Haines v. Kerner, 404 U.S. at 520). "Nevertheless, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law." Martinez-Machicote v. Ramos-Rodriguez, 553 F. Supp. 2d 45, 49 (D.P.R. 2007).

**C.**   **Standards for Equitable Relief**

Where declaratory relief is sought, plaintiff must show that there is a substantial controversy over present rights of 'sufficient immediacy and reality' requiring adjudication." Boston Teachers Union, Local 66, AFT v. Edgar, 787 F.2d 12, 15-16 (1st Cir. 1986), citing Preiser v. Newkirk, 422 U.S.

395, 402 (1975) and <u>Aetna Life Insurance Co. v. Haworth</u>, 300 U.S. 227, 242 (1937).

"The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (1988), empowers a federal court to grant declaratory relief in a case of actual controversy. The Act does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis." <u>Ernst & Young v. Depositors Economic Protection Corp.</u>, 45 F.3d 530, 534 (1st Cir. 1995), citing <u>Franchise Tax Bd. V. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 15-16 (1983). For a claim to be ripe in the declaratory judgment context, two prongs must be met — fitness for review and hardship. <u>Id.</u> at 535.

To obtain injunctive relief, plaintiff must demonstrate that he would suffer irreparable injury without the injunction, that the harm to plaintiff would exceed the harm to the defendants from the imposition of the injunction, and that the public interest would not be adversely served by an injunction. <u>Aponte v. Calderon</u>, 284 F.3d 184, 190 (1st Cir. 2002). Further, the Prison Litigation Reform Act (PLRA) limits the scope of prospective relief in prison cases. <u>See</u> 18 U.S.C. § 3626(a)(1)(A). The Supreme Court has interpreted this section as meaning that

"the scope of the order must be determined with reference to the constitutional violations established by the specific plaintiffs before the court." Brown v. Plata, 131 S. Ct. 1910, 1940 (2011).

## D.   Section 1983 Standard

The complaints are brought pursuant to 42 U.S.C. § 1983.  Section 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations. Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013).  "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).

## IV.   Discussion

As correctly noted by defendants in the Memorandum in Support of Defendants' Motion to Dismiss, see 15-10732, Docket No. 72 at 2, it is unclear what any specific claims in the fourth amended complaint are or under what legal theories any claims might be brought.  The court will address those claims that appear to be asserted by Morales in his Fourth Amended Complaint [15-10732] and Complaint [15-13887].

### A.   Disciplinary Proceedings

To the extent the FAC can be read to allege a due process violation during Morales's disciplinary proceeding, it is well established that an inmate is entitled to the protections of due process only when an existing liberty or property interest is at stake. <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). A liberty interest is infringed only if the punishment inflicted upon the inmate imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. As noted in defendants' Memo in Support of Motion to Dismiss, the guilty finding for the offense concerning Morales's state-issued mattress resulted in no sanction at all. As such, the sanction doesn't rise to the level of an atypical and significant hardship.

Moreover, placement on awaiting action status or administrative segregation does not rise to the level of an atypical and significant hardship. Rather, this is the type of confinement that inmates may receive at some point during their incarceration. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) (administrative segregation is type of confinement ordinarily considered part of incarceration); <u>Lamoureux v. Superintendent, Mass. Corr. Inst., Walpole</u>, 390 Mass. 409, 411, 413, 417-418 (no due process violation where inmate held in administrative segregation between 13 and 18 weeks); <u>Hudson v. Comm'r of Corr.</u>, 46 Mass. App. Ct. 538, 544 (1999), <u>affirmed</u>, 431

Mass. 1 (2000) (being placed in administrative segregation on awaiting action status is type of confinement inmates should anticipate at some point in incarceration).

To the extent Morales complains that DOC officials utilized a preponderance of the evidence standard in his inmate disciplinary hearing, the FAC fails to state a claim.  Even if a liberty interest were implicated, the Supreme Court has held that "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Corr. Institution, Walpole v. Hill, 472 U.S. 445, 457 (1985).  The Supreme Court rejected the "substantial evidence" standard, "declin[ing] to adopt a more stringent evidentiary standard as a constitutional requirement." Id. at 456. See Figueroa v. Vose, 57 F.3d 1061, 1995 WL 352819, *3 (1st Cir. 1995) (unpublished) ("[T]he Hill standard describes the relevant federal due process standard even though state law imposes a stricter evidentiary standard.").

If prisoners are afforded requisite process at a disciplinary hearing, they cannot sustain § 1983 claims for allegations of false, improper, or erroneous disciplinary charges filed by prison officials. See, e.g., Orwat v. Maloney, 360 F. Supp. 2d 146, 157, 162 (D. Mass. 2005) ("[P]rison inmates have no constitutionally guaranteed immunity from being falsely or wrongly

accused of conduct which may result in the deprivation of a protected liberty interest. . . .  The constitutional corrective for such things is the subsequent hearing that the inmate receives on those charges." (citations omitted)). "The Court's review of a prisoner's challenge to the due process deficiencies in a disciplinary hearing is thus 'limited to whether [due process] minimum protections [are] met, and whether the written record provided by the fact finder presents some evidence to support the findings made in the disciplinary hearing.'" Cuevas v. DiPaulo, C.A. 2011 WL 2118268, at *5 (D. Mass. May 23, 2011) (quoting (Orwat, 360 F. Supp. 2d at 163)).

To the extent the FAC could be read as an attempt to seek review of the disciplinary report under state law, this Court lacks the jurisdiction to do so. Where a prisoner challenges the result of an individual disciplinary proceeding, Massachusetts law provides that the only proper mode of review is an action in the nature of certiorari under G.L. c. 249, § 4.  The remedy available under G.L. c. 249, if errors resulting in a manifest injustice or irreparable harm were found, would be a new disciplinary hearing. See Real v. Superintendent, Mass. Corr. Inst., Walpole, 390 Mass. 399, 408 (1983). Cf. Comm. for Public Counsel Serv.s v. Lookner, 47 Mass. App. Ct. 833, 837 n.5 (1999) (discussing standard to be met).  Accordingly, these claims are subject to dismissal.

## B.     Alleged Excessive Use of Force in Cell Removal

Morales alleges that excessive force was used against him when he was removed from his cell on December 17, 2014.  See FAC at p. 4.  The Eighth Amendment protects convicted prisoners from the use of excessive force. See Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002).  The applicable Eighth Amendment standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In asserting an excessive force claim, a prisoner need not allege that he has sustained a serious or significant injury in order to obtain relief. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The relevant factors for the court to consider in evaluating an excessive force claim are: the need for force; the relationship between that need and the amount of force applied; the extent of any injury inflicted; the "threat 'reasonably perceived by the responsible officials;'" and the "'efforts made to temper the severity of a forceful response.'" McMillian, 503 U.S. at 7.

Here, when an officer spoke to Morales about being removed from his cell, Morales responded that there was no reason to remove him from the cell.   Morales explains that he refused to leave his cell because he was concerned about his property.  Although he states in a conclusory fashion

27

that excessive force was used, the allegations suggest that forceful removal was necessary because of Morales's refusal to leave his cell.  Therefore, all of the facts alleged in the FAC fail to state a plausible claim that the officers were acting to harm Morales rather than to remove him from his cell in an orderly fashion.  Nothing in the FAC supports an excessive force claim.

### C.    Seizure of Property

Morales complains of the loss of personal property including his legal work, art books and magazines.  See, e.g. FAC at p. 13.  However, it is well settled that a state employee does not violate the procedural requirements of the due process clause of the Fourteenth Amendment by an unauthorized negligent or intentional deprivation of property "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Therefore, if state law provides an adequate remedy, no due process violation occurred.  Chongris v. Bd. of Appeals of Town of Andover, 811 F.2d 36, 44–45 (1st Cir. 1987). If a Morales could pursue post-deprivation remedies against the defendants, an adequate post-deprivation remedy is available. See Latimore v. Dep't of Corrs., 2013 WL 6181082, at *12 (D. Mass. Nov. 22, 2013).

Here, Morales has not alleged that the rights provided to him under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, or otherwise

under state law, are inadequate forms of relief.  See Riordan v. Martin, 51 F.3d 264, 1995 WL 146215, at *1 (1st Cir. 1995) (unpublished decision) ("Since inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory.").  Morales may pursue remedies through the prison grievance system for the deprivation of his property and request an adequate remedy or may have an available remedy in state court pursuant to Mass. Gen. Laws ch. 258.  Thus, the FAC fails to state a claim for which relief can be granted for deprivation of property.

### D.    Deliberate Indifference to Serious Medical Need

The Eighth Amendment prohibits "cruel and unusual punishment" and is the source of long-settled principles governing entitlement to constitutionally adequate medical treatment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).   Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976); Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc), cert. denied, Kosilek v. O'Brien, 135 S. Ct. 2059 (2015).

Morales complains of that he developed a rash from showering in the DDU and that the medical staff failed to provide a sufficient amount of cream to treat his rash.  However, the facts alleged do not involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. at 105-106)).  Accordingly, this claim is subject to dismissal.

## E.   Placement on Mental Health Status for Refusing to Shower

Morales complains that he was placed on mental health status (suicide watch) for refusing to shower, even though he believes he presented no risk of harm to himself or anyone else.  He contends that the defendants placed him on mental health status as an unconstitutional punishment.

To the extent it is Morales's opinion that he should not have been placed on mental health status based on his refusal to shower in the DDU, this disagreement with the mental health workers (including unserved mental health worker Yveline Simon) does not rise to the level of medical indifference in violation of the Eighth Amendment.  See Soneeya v. Spencer, 851 F. Supp. 2d 228, 242 (D. Mass. 2012).

To the extent Morales complains of a due process violation, Morales does not have a liberty interest in avoiding a particular condition of confinement unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (no due process violation occurs where housing assignment does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); see e.g. Mendez v. Kemp, 2008 WL 4937590, *3 (D. Del. Nov. 18, 2008) (claim challenging prison's attempt to move prisoner out of protective custody not actionable as prisoner has no due process right to incarceration in particular institution).

### F.   Retaliation

Morales asserts that he was placed on "security status" and "mental health status" for placement in the DDU as "punishment for arrogance." FAC at 8.   It is well-settled that "retaliation against a prisoner's exercise of constitutional rights is actionable" under Section 1983. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, 562 U.S. 180, 190-191 (2011) (citing Crawford–El v. Britton, 523 U.S. 574, 592 (1998)).   However, because "running a prison system is a difficult

enterprise" and because prisoner claims of retaliation are "easily fabricated and pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," such claims must be based on facts, not on "gossamer strands of speculation and surmise."  <u>Hannon</u>, 645 F.3d at 48 (internal punctuation, quotation marks, and citation omitted).

In order to assert a retaliation claim, plaintiff must point to specific facts that demonstrate that the adverse acts taken were motivated by an intent to punish Morales for exercising his constitutional rights.  Here, Morales alleges that he was being punished for "arrogance" and the FAC is devoid of any specific facts supporting his allegation of retaliation. Accordingly, this claim is subject to dismissal.

### G.    Conditions of Confinement While on Security Status for Ten Days

While placed on security status for ten days beginning on January 17, 2015 and continuing through January 27, 2015, Morales alleges that he "was treated as if he was suicidal and was denied writing material, access to his legal work, a pen to file a grievance, utensils for food and the ability to sleep for more than an hour at a time [because the light was always on]."  FAC at 9-10.  The room had no window and it had a camera that recorded every action of the Morales.  <u>Id</u>. at 10.

"[C]onditions in the DDU are considerably more onerous than conditions of confinement for the general population at MCI–Cedar Junction." Ford v. Bender, 768 F.3d 15, 21 (1st Cir. 2014) (describing conditions of confinement in the DDU); see also Duclerc v. Massachusetts Dep't of Corr., 2012 WL 6615040, at *2 (D. Mass. Dec. 18, 2012) (describing terms of confinement in the DDU).  Under the Eighth Amendment, prisoners are entitled to adequate shelter, including the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834, (1994) (internal citation omitted).  In order for a prisoner to establish that he has been subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a plaintiff must establish that: (i) from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living; and (ii) from a subjective standpoint, the defendant was deliberately indifferent to his health or safety. Surprenant v. Cesar Rivas, 424 F.3d 5, 18-19 (1st Cir. 2005), citing Farmer, 511 U.S. at 834. "Deliberate indifference" is a mental state similar to criminal recklessness. Id.  Extreme deprivations are required to make out a conditions of confinement claim. McMillian, 503 U.S. at 8-9.  Because "routine discomfort is part of the penalty criminal offenders pay for their offense against society, only those

deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (internal citations omitted).

Here, Morales's allegations concerning this ten-day period in January 2015 does not allege a deprivation sufficient to establish a cognizable Eighth Amendment claim, especially when considering the duration of time.  See Surprenant v. Rivas, 424 F.3d 5, 20 (1st Cir. 2005) (citing Hutto v. Finney, 437 U.S. 678, 687 (1978) (noting that unpleasant conditions of confinement "might be tolerable for a few days and intolerably cruel for weeks and months")).  In this case, the period in question is less than two weeks.

## H.    Separate Housing for Male and Female Prisoners

In connection with Morales's "argument against the separation of male and female prisoners," Morales complains that the defendants "fail to accommodate religion and forces the Plaintiff to adhere to a foreign religious belief, to deny him the ability to social interaction and assembly, as an extension of his imprisonment, of where there is nothing in his sentence to imprisonment, that says, that he must adhere to the principles of a penitentiary, in violation of the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution."   FAC at pp. 22, 36.

Generally, courts grant a high degree of deference to prison administrators in their adoption and execution of policies and practices that they deem necessary to maintain institutional security. See Turner v. Safley, 482 U.S. 78, 85 (1987) (stating that courts should accord a high degree of deference to prison authorities because courts have little expertise in the 'inordinately difficult' task of running prisons); Bell v. Wolfish, 441 U.S. 520, 545–47 (1979) (holding that prison administrators should be given "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Morales's arguments concerning separate housing fails to state a claim upon which relief may be granted.

## I.   Access to the Courts

Morales contends that unspecified actions of the defendants "compromised his criminal conviction appeal." FAC at p. 13. Morales alleges that on June 16, 2015, he "received a letter from his attorney that he lost his criminal conviction Appeal." Id. at 15. Finally, he alleges that he was denied access to the court during the periods he was placed on mental health and security status in January 2015; particularly when he was unaware of a video conference scheduled for his criminal conviction Appeal. Id. at 23.

To state a claim that he was denied meaningful access to the courts, however, plaintiff must show that his legal status was harmed by the deprivation of adequate legal materials, or other means for accessing the courts.  See Lewis v. Casey, 518 U.S. 343, 351 & 355 (1996).  Here, Morales has failed to allege facts showing that he has suffered actual injury in his ability to challenge his conviction.  Accordingly, this claim will be dismissed.

## J.   No Constitutional Right to Access Pornographic Materials

Morales contends that he should not "be denied pornography [based upon] the actions of other prisoners [especially because he does not have a history of improper use of pornography and other property].   FAC at 33-34. He contends that "the laws against tattooing, fornication and pornography must be repealed so as to not accommodate religion, and unless they have proof that the plaintiff has compromised security and/or safety in a similarly situated environment."  Id. at 37.

The court finds no legal support for Morales's claim that denial of pornographic material amounts to a constitutional deprivation.  The denial of ready access to pornography is not sufficiently grave to form the basis of an Eighth Amendment violation. See French v. Morrow, 513 F. App'x 695, 696, 2013 WL 1174056 (9th Cir. 2013) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying the minimal civilized

measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citation and internal quotation marks omitted)).

With regard to the First Amendment, "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." Beaulieu v. Ludeman, 2012 WL 3711342 (8th Cir. August 29, 2012) at *19 (quoting Martyr v. Bachik, 755 F. Supp. 325, 328 (D.Or.1991)).   Courts have held that restrictions on certain rights are permissible so long as they advance the state's interest in security, order, and rehabilitation. See Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012) (holding that interference with non-legal mail, i.e., seizure and retention of DVDs and CDs, did not violate First Amendment); Semler v. Ludeman, 2010 WL 145275, *15 (D. Minn. Jan. 8, 2010) (finding no constitutional violation based on restrictions on a civilly committed sex offender's right to access pornographic materials where such restrictions are reasonably related to legitimate interests to ensure security and order in the facility).   Accordingly, this claim will be dismissed.

### K.   Judicial Immunity

Morales contends that through Judge "Boal's actions that the Morales's Second Complaint (Docket No. 5) fails to state a claim upon which relief can

be granted . . . ." FAC at 39.  Morales seeks to challenge several of magistrate Judge Boal's rulings, id. at 40-41, and argues that she "has compromised this civil action so much that she had also interfered with the Plaintiff's ability to receive reliefs (sic) from a default judgment." Id. at 43.

All of Morales's claims against Magistrate Judge Boal under 42 U.S.C. § 1983 and any state tort claims, are not legally cognizable because absolute judicial immunity protects a judge from acts performed within the scope of her jurisdiction.  Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").  "Absolute judicial immunity protects judges from 'civil liability for any normal and routine judicial act,' except those taken in the 'clear absence of all jurisdiction.'" Goldblatt v. Geiger, 2011 WL 1362119 (D.N.H. 2011), quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).

Here, although Morales may believe that Magistrate Judge Boal erred in her rulings or acted wrongfully towards him, there is no basis for concluding that the actions or inactions of Magistrate Judge Boal were taken outside the scope of her jurisdiction. See Ricciuti v. Alander, 2004 WL 555235, *2 (D. Conn. 2004) ("Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge."). Thus, even if this court accepted Morales's allegations of misconduct by Magistrate Judge Boal, her actions or inactions would not constitute the type of extra-judicial activity exempting her from entitlement to absolute judicial immunity. Accordingly, the claims against Magistrate Judge Boal are subject to *sua sponte* dismissal.

### L.   Claims against Defendants Grant and White

Morales complains that defendant DOC counsel Sheryl Grant and Nancy White "libeled the plaintiff" when they suggested in pleadings that the relief Morales sought "would pose safety and security risks." Complaint ("Compl."), [15-13887] at 18-19.   Morales also complains that these defendants "attempted to justify" the actions of other defendants in "falsely or wrongly accus[ing] the plaintiff, "destroy[ing] the plaintiff's legal work," and "compromise[ing] his arguments (that of which had involved case law) for his criminal conviction Appeal."   Id. at 19.   Morales further complains

39

that defendants Grant and White "have not shown how the Plaintiff will use his reliefs to undermine security of the prison and where Defendants Grant and White have not explained how the United States Constitution does not support the Plaintiff's reliefs." Id. at 47.

The facts alleged against defendants Grant and White do not state a violation of Morales's constitutional rights.  Without federal subject matter jurisdiction, the court declines to entertain any state law claims Morales seeks to assert against these two defendants.  These claims are subject to *sua sponte* dismissal.

### M.    No Supervisory Liability under Section 1983

To the extent Morales asserts claims against Commissioner Carol Higgins O'Brien, as noted above, the allegations fail to state claims upon which relief can be granted.  Claims asserted against a supervisor, in an action brought pursuant to 42 U.S.C. § 1983, may not be based on a theory of respondeat superior.  Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014).  Instead, claims against supervisors must be based on the supervisor's own acts or omissions constituting "'supervisory encouragement, condonation or acquiescence, or gross negligence of the supervisor amounting to deliberate indifference.'"  Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (alteration and citation omitted).  "It is

well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" Velez-Rivera v. Agosto-Alicea, 437 F.3d 146, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).

Here, Morales has not asserted facts to demonstrate that the Commissioner was personally involved in, aware of, or deliberately indifferent to the conditions of Morales's confinement.  As such, the allegations fail to state a constitutional violation actionable under § 1983.

### N.  Constitutional Challenge to Federal and State Statutes and Regulations

With the exception of the state tattoo statute, Mass. Gen. Laws ch.265, § 34 (tattooing body of person by other than qualified physician; punishment)[2]; plaintiff's challenge in C.A. No. 15-13887, as to the following statutes and regulations, fails to state a constitutional claim: Mass. Gen. Laws ch. 127, § 22 (separation of prisoners; minors);  Mass. Gen. Laws ch. 231, § 6F (costs, expenses and interest for insubstantial, frivolous or bad claims or defenses); Mass. Gen. Laws ch. 127, § 38E (inmate complaints; grievance system; grievance resolution), Mass. Gen. Laws ch. 127, § 38F

---

[2] Massachusetts General Laws ch. 265, § 34, was held unconstitutional by Lanphear v. Massachusetts, No. 99-1896-B (Mass. Super. Ct. Oct. 20, 2000) (holding that both the process and product of tattooing merit First Amendment protection).

(exhaustion of administrative remedies under § 38E; court consideration of inmate claims); 103 C.M.R. § 403 (inmate property); 103 C.M.R. § 430 (inmate discipline);  103 C.M.R. § 481 (inmate mail);  103 C.M.R. § 491 (inmate grievances); 18 U.S.C. § 1791(providing or possessing contraband in prison); 28 U.S.C. § 530c (authority to use available funds); 28 U.S.C. § 1915A (screening); and 42 U.S.C. § 1997e (suits by prisoners).

To the extent Morales complains that the defendants violated state laws and regulations, such violations are not cognizable in this Section 1983 lawsuit.  Even if it is true that the defendants violated certain internal prison policies, they do not state federal constitutional claims and cannot, alone, form the basis for a federal claim under 42 U.S.C. § 1983.  Only violations of the United States Constitution provides the source for liability in a civil rights suit based on § 1983.  Sobitan v. Glud, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (internal citation omitted).  Only violations of one's constitutional rights are protected, not violations of state statutes or a state agency's policy. Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U .S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws").  To the extent Morales's alleged constitutional violations are based on a violation of

state law, the claims fail because the allegations fail to also state a claim for violation of a secured federal rights.

## O.    Injunctive Relief

Here Morales's request for injunctive relief should be dismissed because it is not narrowly drawn as required by the PLRA.  <u>See</u> 18 U.S.C. 3626(a)(1).  Much of the requested relief is not relief this Court can grant in this case and, more importantly, Morales is not entitled to any of the injunctive relief he requests because the claims are subject to dismissal.

## V.    <u>Conclusion</u>

Although the Court finds that both Morales's FAC [15-10732] and original complaint [15-13887] fail to state claims for relief pursuant to F.R.C.P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), §1915(e)(2)(B)(iii), §1915A, the court does not find, as suggested in Defendants' Memorandum in Support of Motion to Dismiss [15-10732, #72] that these actions are frivolous and/or malicious and brought in bad faith.

## <u>ORDER</u>

Accordingly, for the reasons set forth above,

1)    Plaintiff's motion (ECF # 2, 15-13887) to proceed *in forma pauperis* is denied as moot;

(2)     Defendants' motion (ECF #71, 15-10732) to dismiss for failure to state a claim is ALLOWED; and plaintiff's motion (ECF #76, 15-10732) to dismiss defendants' responsive pleadings is DENIED;

(3)     The claims against the five new defendants named in the fourth amended complaint are dismissed.

(4)     Plaintiff's consolidated case, C.A. No. 15-13887, is dismissed with prejudice pursuant to 1915A for failure to state a claim and for the reasons set forth in defendants' motion to dismiss similar claims raised in plaintiff's FAC filed in 15-10732.  Plaintiff's consolidated case, C.A. No. 15-13887, shall be closed.

(5)     The clerk shall enter a separate order of dismissal for these consolidated cases and the clerk shall close C.A. No. 15-13887.

SO ORDERED.

  /s/Richard G. Stearns
United States District Judge